108 F.3d 1379
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Randy D. PURIFOY, Petitioner-Appellant.
v.
Judy SMITH, Respondent-Appellee.*
No. 95-3353.
 United States Court of Appeals, Seventh Circuit.
 Submitted Feb. 6, 1997.**
Decided Feb. 25, 1997.
 
 Before POSNER, Chief Judge, and KANNE and DIANE P. WOOD, Circuit Judges.
 
 ORDER
 
 1
 In 1976, Randy Purifoy pleaded guilty in Wisconsin state court to one count of rape and one count of murder. For the rape conviction, the judge, rather than impose a prison sentence, committed Purifoy to the Wisconsin Department of Health and Social Services (DHSS) for an indeterminate term of up to 30 years (with the possibility that DHSS could extend the period of commitment at the end of the 30 years if it made necessary findings and presented them to the court). For the murder conviction, the judge sentenced Purifoy to 5 to 25 years imprisonment to commence when DHSS released him. Purifoy completed his DHSS commitment in 1990 and was transferred to prison, where he is currently serving his sentence for murder.
 
 
 2
 Purifoy brought a petition for habeas corpus in the district court, asserting several constitutional challenges to his incarceration. 28 U.S.C. § 2254. He claimed that his consecutive sentences violated the Double Jeopardy Clause of the Fifth Amendment. He argued that the fact that he was subject to a prison term following his commitment to DHSS resulted in his being denied the treatment he would have received while committed to that department if he were not subject to a subsequent prison sentence. He argued that this lack of treatment violated his rights to due process and equal protection and his right to be free from cruel and unusual punishment. The district court concluded that Purifoy had not shown that any of his constitutional rights were violated and denied the petition.
 
 
 3
 On April 24, 1996, President Clinton signed into law the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214. Section 104(3) of the Act, codified at 28 U.S.C. § 2254(d), limits the power of a federal court to grant a writ of habeas corpus to cases in which state proceedings "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." We have held that this provision applies to petitions, such as the present one, that were filed prior to the effective date of the new law. Lindh v. Murphy, 96 F.3d 856, 865 (7th Cir.1996) (en banc ), cert. granted in part, 117 S.Ct. 726 (Jan. 10, 1997) (No. 96-6298). We note that in the present case the change in the law makes no difference. We conclude that Purifoy would not be entitled to relief even under the more relaxed standard that was in place prior to the new legislation.
 
 
 4
 We first address Purifoy's double jeopardy claim. When a state punishes a defendant for violating two statutes with one set of actions, the state does not violate the Double Jeopardy Clause so long as each statutory provision requires proof of at least one element not contained in the other statute. Rutledge v. United States, 116 S.Ct. 1241, 1246 (1996); Blockburger v. United States, 284 U.S. 299, 304 (1932). Purifoy was given separate sentences for violating the Wisconsin rape statute, Wis.Stat. § 944.01 (1973), and the murder statute. Wis.Stat. § 940 (1973). Each of these statutes obviously contains at least one element not contained in the other. Therefore, the state did not violate the Double Jeopardy Clause when it subjected Purifoy to consecutive terms of incarceration.
 
 
 5
 Purifoy's equal protection and due process claims as well as his claim that he was subject to cruel and unusual punishment are based on his assertion that he was not afforded sufficient treatment while he was in DHSS custody. He claims that he received less treatment than he would have had he not been subject to a subsequent prison term. (The state admits this, stating that DHSS did not give him the degree of treatment that would enable him to live in an unsupervised environment because he was not going to be doing so in the foreseeable future.) Purifoy appears to be arguing both that he has the right to treatment now and that he has the right to be released from custody. The former of these claims is not cognizable in a habeas corpus proceeding. 28 U.S.C. § 2254. The latter claim is one that is properly brought under § 2254, although it is not clear that even if his lack of treatment in the past amounted to a constitutional violation that he would have the right to be released from his present custody. We need not reach this issue, however, because we conclude that the state did not violate Purifoy's constitutional rights by the manner in which it provided treatment to him (or failed to do so).
 
 
 6
 The equal protection clause forbids the state from arbitrarily treating one group differently from another. Anderson v. Romero, 72 F.3d 518, 526 (7th Cir.1995). However, unless the challenged state practice results in disparate treatment of members of a suspect class or impinges upon a fundamental right, the state may afford different treatment to different groups of persons so long as the distinction is "rationally related to a legitimate state interest." City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 440 (1985); Pryor v. Brennan, 914 F.2d 921, 923 (7th Cir.1990). Prisoners do not constitute a suspect class, Pryor, 914 F.2d at 923, and persons subject to civil commitment do not have a fundamental right to a particular form of treatment. In the present case it was reasonable for the state to provide a different level of rehabilitation treatment to Purifoy on the ground that in addition to his civil commitment for rape, he was facing a prison term for murder. Humphrey v. Cady, 405 U.S. 504, 508 (1972). Therefore, Purifoy does not have a valid equal protection claim.
 
 
 7
 Purifoy claims that the state violated his due process rights when it failed to provide him with sufficient mental health treatment. Specifically, he claims that he was committed to DHSS in order to receive mental health treatment, that his release from DHSS custody was contingent upon his making a certain amount of progress, and that he received little or no treatment, which limited his ability to be released. When a plaintiff brings a due process claim, the threshold inquiry is whether he has been deprived of a liberty or property interest. Board of Regents v. Roth, 408 U.S. 564, 569 (1972); Downtown Auto Parks, Inc. v. City of Milwaukee, 938 F.2d 705, 710 (7th Cir.1991). (The Due Process Clause also protects "life." However, Purifoy does not claim that lack of treatment deprived him of life.) Liberty interests includes rights created by the Due Process Clause itself and those created by state law. Jones v. United States, 463 U.S. 354, 361 (1983); Villanova v. Abrams, 972 F.2d 792, 798 (7th Cir.1992). Property interests arise only from independent sources, such as state law, not from the Due Process Clause itself. Roth, 408 U.S. at 569; Downtown Auto Parks, 938 U.S. at 710.
 
 
 8
 We first examine whether Purifoy had a liberty interest in mental health treatment. Persons who are involuntarily committed have a liberty interest in treatment. Youngberg v. Romeo, 457 U.S. 307, 315-16 (1982); Villanova, 972 F.2d at 797. The cases that have enunciated this doctrine, however, have arisen in the context of persons who were civilly committed without having been convicted of a crime, or who were committed for a period after they have completed their sentences. In such a case, the state deprives the detainee of liberty without being offered the process that is afforded to criminal defendants at trial.
 
 
 9
 In the instant case, Purifoy's conviction was imposed in lieu of sentencing him to prison for his rape conviction. Purifoy does not claim that he was not afforded proper procedures at his criminal trial. Based upon the rape conviction, the judge could have sentenced him to prison for up to 30 years. See Wis.Stat. § 944.01 (1973) (Repealed by 1975 Wis.Laws c. 184 § 7 (eff. March 27, 1976)). Purifoy does not claim that his civil incarceration was a greater infringement upon his liberty than a prison sentence. (In fact he claims that he received no treatment and thus that his civil incarceration was substantially equivalent to a prison sentence.) Because the state gave him all the process that was due prior to taking away his liberty in the manner that it did, it did not improperly infringe upon a liberty interest inherent in either the Due Process Clause or one that was created by state law. See Humphrey v. Cady, 405 U.S. 504, 511-12 (1972) ("[The argument that commitment] is merely an alternative to penal sentencing [and therefore may be imposed after the state obtains a criminal conviction] has force with respect to an initial [civil] commitment ... which is imposed in lieu of [a criminal] sentence ... [and which is] limited by the nature of the defendant's crime [and] the maximum sentence authorized for that crime.").
 
 
 10
 We now address the issue whether Purifoy had a property interest in receiving mental health treatment. Statutorily created "[e]ntitlements to a broad range of health and welfare benefits have been considered 'property' under the due process clause." Youakim v. McDonald, 71 F.3d 1274, 1288 (7th Cir.1995) (citations omitted), cert. denied, 116 S.Ct. 2571 (1996). One does not have a property interest for due process purposes, however, merely by having a "desire" or "expectation" of a benefit. Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972). He must have " 'a legitimate claim of entitlement.' " Easter House v. Felder, 910 F.2d 1387, 1395 (7th Cir.1990) (en banc ) (quoting Roth, 408 U.S. at 577). This issue turns upon the state statute in question. Roth, 408 U.S. at 577; Easter House, 910 F.2d at 1395.
 
 
 11
 Wisconsin law did not give Purifoy a legitimate claim of entitlement to mental health treatment of a particular nature or to mental health treatment at all for that matter. The statute that discusses the treatment to be afforded to persons committed to DHSS gives broad discretion to that department. Wis.Stat. § 975.08 provides that "[DHSS] shall arrange for [the inmate's] treatment and care in the institution best suited in its judgment to care for him ... and may require such modes of life and conduct as seem best adapted to fit him for return to full liberty without danger to the public." (emphasis added). Based upon the statute's commitment of placement decisions to the judgment of DHSS and the permissive language of the provision we conclude that Purifoy did not have a legitimate claim of entitlement to mental health treatment upon his commitment to DHSS.
 
 
 12
 Purifoy argues that because he did not receive treatment while in DHSS custody, that his incarceration amounted to punishment and therefore violated the Eighth Amendment's prohibition on cruel and unusual punishment. State officials' deliberate indifference to an inmate's medical needs violates the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). But, Purifoy's claim is not that his mental condition was so severe that the lack of treatment violated the Eighth Amendment. Rather, he claims that because he received no treatment while subject to civil commitment that his incarceration amounted to punishment. He claims that this arrangement violated the Eighth Amendment.
 
 
 13
 Purifoy's Eighth Amendment argument fails for the same reason that his due process claim does. He was convicted of a crime and therefore the state could punish him without violating his constitutional rights (Eighth Amendment, Due Process, Equal Protection et al.). If the judge had sentenced him to jail for his rape conviction instead of committing him to DHSS, Purifoy would have no Eighth Amendment claim. (He does not assert that the nature of the confinement was cruel or unusual.) As such, he cannot establish an Eighth Amendment claim on the ground that he was committed to DHSS and his confinement there was similar to a prison term.
 
 
 14
 For the first time on appeal, Purifoy argues that the state violated the Fourth Amendment when it failed to provide treatment for him while he was in DHSS custody. Because he did not present this issue to the district court, we do not address it on appeal. Williams v. Turner, 5 F.3d 1114, 1117 (7th Cir.1993).
 
 
 15
 AFFIRMED.
 
 
 
 *
 The petitioner named Gary R. McCaughtry as the respondent. The petitioner's current place of incarceration is the Oshkosh Correctional Institution. Judy Smith is the warden there and as such as been substituted as the respondent in the instant appeal. 28 U.S.C. § 2254, Rule 2(a); Fed.R.App.P. 43(b); Cir.R. 43
 
 
 **
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary and the appeal is submitted on the briefs and the record. See Fed.R.App.P. 34(a); Cir.R. 34(f)